IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : CRIMINAL NO. 06-112 (JDB) |
| DAVID S.C. TATUM, | : |
| Defendant. | : |

FILED
MAY 0 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## STIPULATED STATEMENT OF FACTS IN SUPPORT OF GUILTY PLEA

The defendant David S. C. Tatum and the United States agree that the following facts are true and correct, and that if this matter were to proceed to trial the United States would prove these facts beyond a reasonable doubt:

1. At all times relevant to the Information filed in this case, the defendant David S. C. Tatum ("David Tatum") was employed as a Vice President of Clark Material Handling Company (CMHC), at its headquarters in Lexington, Kentucky, which was engaged in the manufacture and marketing of, and the supplying of replacement parts for, forklift trucks.

2. At all times relevant to the Information, the United States has maintained various economic sanctions against Iran, including a trade embargo. These sanctions have generally prohibited the unlicensed exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States. Applications for licenses for such transactions were to be made to the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), located in the District of Columbia. David Tatum was aware of the United States trade embargo on exports to Iran, and was generally aware of United States export

licensing requirements. He also was aware that there was no embargo on exports of United States goods to the United Arab Emirates.

3. Before 2004, David Tatum knew that Sepahan Lifter was a company in Iran engaged, within Iran, in the business of manufacturing, among other things, 5-ton forklift trucks originally designed by CMHC, for which Sepahan Lifter required specific parts; beginning in early 2003, some of those parts were not readily available except from CMHC. David Tatum also knew that Mohammad Ali Sharbaf was a principal officer of Sepahan Lifter.

4. During January 2004, David Tatum became aware that two of his coworkers, Robert L. Quinn and Michael H. Holland, were engaged in email contact with Sharbaf and other employees of Sepahan Lifter, providing replacement parts price quotations for the purpose of generating potential purchase orders to CMHC from Sepahan Lifter. David Tatum further became aware that Quinn and Holland had arranged for parts to be shipped to Sepahan Lifter through a company in the United Arab Emirates, Sharp Line Trading, thereby making it appear that the parts were not going to an embargoed country.

5. During January 2004, David Tatum learned that Quinn and Holland were preparing a parts price quotation to Sharbaf potentially worth approximately $290,000. In an email to Quinn and Holland, dated January 13, 2004, David Tatum stated that "we [CMHC] will quote Sharpline [sic] for parts to be shipped to Dubai" and that he (Tatum) and Holland would provide the price quotation to Quinn "so you can pass on to the enduser." By "enduser" Tatum meant Sepahan Lifer and Sharbaf. In an email to Quinn and Holland dated January 16, 2004, David Tatum noted that "CMHC is not able to have any direct trade contacts with Iran. The trade embargo is still in place." Tatum then added that an alternative way to meet Sharpline's need for parts was to do so

indirectly through the United Arab Emirates: "we can quote, ship and bill to Sharpline." In an email to Holland, dated March 29, 2004, Tatum advised that a price quotation for CMHC parts destined for Sharbaf through a third country should be at "intercompany transfer price" rates. In none of these emails did David Tatum instruct Quinn or Holland to cease sending CMHC replacement parts to Sepahan Lifter or Sharbaf either directly or through a third party.

6. On December 2, 2004, agents of the United States Department of Commerce Office of Export Enforcement and the United States Department of Homeland Security Immigration and Customs Enforcement executed a search warrant on the CMHC offices in Lexington, Kentucky. David Tatum was present at that place and time, was interviewed by OEE and ICE agents, and became aware that those government agencies were investigating possible illegal transactions involving CMHC, Sepahan Lifter, and Sharp Line Trading.

7. It was material to the government's investigation whether any CMHC personnel, including David Tatum, were aware that Quinn and Holland were engaged in trying to set up illegal transactions between CMHC and Sepahan Lifter by providing quotes and shipping parts to Sharp Line Trading to be forwarded on to Sepahan Lifter.

8. On August 10, 2005, David Tatum stated to OEE and ICE agents that, after learning of Quinn's and Holland's dealing with Sepahan Lifter and Sharbaf, he had instructed them to cease sending CMHC replacement parts to Sepahan Lifter or Sharbaf either directly or through a third party. At the time Tatum made this statement, he knew that, in fact, he had not done so.

9.  At all times, with respect to the conduct described in this Stipulated Statement of Facts, the defendant David S.C. Tatum acted knowingly, unlawfully, purposefully, and not by accident, inadvertence, mistake, or other innocent reason.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar 451058

By: _____
Laura A. Ingersoll
Assistant United States Attorney
Connecticut Bar # 306759
202/514-9549
Laura.Ingersoll@usdoj.gov

_____
Jay I. Bratt
Assistant United States Attorney
D.C. Bar # 426585
202/514-5776
Jay.Bratt@usdoj.gov

National Security Section
United States Attorney's Office
555 4th Street, NW – 11th Floor
Washington, D.C.  20530

After consulting with my attorney, Kent Wicker, and pursuant to the plea agreement entered into between me, David S.C. Tatum, and the United States, I hereby stipulate and agree that the above Stipulated Statement of Facts is true and accurate, and that had this matter

proceeded to trial, the United States would have proved beyond a reasonable doubt the facts stated in the Stipulated Statement of Facts.

_____5/4/06_____  
Date

_____  
David S.C. Tatum, Defendant

I am David S.C. Tatum's attorney. I have carefully reviewed the above Stipulated Statement of Facts with him. To my knowledge, his decision to stipulate and agree to these facts is an informed and voluntary one.

_____5/4/06_____  
Date

_____  
Kent Wicker, Esquire  
Counsel for the Defendant